Peck, J.,
concurring. On another occasion, each of my six colleagues was privileged to consider a situation identical to that here presented and to arrive at his individual conclusion unfettered by established and existing law. Alone of the seven members of this court, I have not had the opportunity of passing upon the issue, created by the appointment of a member of the Columbus City Council by the city’s mayor, without the restriction of a controlling decision of this court directly in point. Exercising judgment in the enviable aura of unrestricted choice, three of my colleagues chose each of the two divergent courses (State, ex rel. Devine, Pros. Atty., v. Hoermle, 168 Ohio St., 461, 156 N. E. [2d], 131), and each now adheres to his position so adopted. I enjoy no such freedom of choice and consider myself bound to follow what has now been established as the law of this state. Whether I find the result to be palatable is of concern only to myself.
When the Hoermle case was before the court, the law of Ohio was silent on the pivotal question there and here at issue, concerning the existence of a conflict between the city’s charter and the statutory law of the state. A simple clear-cut question was and is thereby presented, because if such a conflict exists *325 the charter must prevail over the statute, and the mayor has no power of appointment. The categorical and unequivocal answer of this court to that question was that there is such a conflict. The court went on to make the following pronouncement of the law (paragraph two of the syllabus):
“The facts, that a vacancy occurs in the Columbus City Council and that council fails for over 30 days to fill such vacancy, do not authorize the mayor of Columbus to fill such vacancy by appointment.”
Thus, it is now and has been since January 28, 1959, the clear law of this state that under the present circumstances the mayor has no power of appointment. As a matter of fact, no one contends otherwise. Even the respondent’s attorney concedes this to be the law and is not now asking that the law be determined; he asks that the law be changed.
Such a change in the pronounced law can only result from an abandonment of a doctrine which may well be considered the heart and core of Anglo-Saxon jurisprudence. That doctrine is referred to as stare decisis, a phrase which is an abbreviation of a maxim adjuring the courts “to stand by precedent, and not to disturb settled points.” Ballard County v. Kentucky County Commissioners, 290 Ky., 770, 162 S. W. (2d), 771. In urging such abandonment, the respondent argues that the doctrine, which he characterizes as “of long standing and veneration in our jurisprudence,” should not control here because there are no property rights involved and the Hoermle decision is “unsupported by the confirmation of time.” We are impressed by neither argument. It is true that the continuity provided by adherence to precedent affords confidence in property transactions, but ours are not a state and a nation alone of property; of at least equal importance is the confidence in our form of government which can only result from freedom from fluctuation. From this it follows that we cannot find the doctrine of stare decisis to be without application merely because the submission of the present case followed the decision of the Hoermle case by only a year to the day. On the contrary, to so promptly disavow a conclusion thoughtfully arrived at by this court would for all time to come cause its decisions to be suspect as fragile ephemeral things. In the American form *326 of government the executive and legislative branches are provided to be subject to reasonably constant variation and one of the most ponderous counterweights provided by the judiciary to the balance of powers is that of continuity and steadfastness. This need for stability of principle has occasioned the doctrine of stare decisis and causes it to be compelling among those who would despair at seeing the judiciary become subservient to whim.
The question as to whether there is conflict between the Columbus charter and the statutory law is a close one; that is proved by the four to three decision in the Hoermle case and further emphasized by the fact that three separate opinions (majority and two dissenting) were there written and by the fact that there is again eminent judicial authority on both sides of the question. Until the Hoermle decision was filed, the close question was also an open one, but upon that filing it became a closed question. For me to reopen it by refusing to follow the law as established by this court, whatever the temptation to such action might be, would shake faith in the integrity of this tribunal and is a course I will not follow.
I offer two final observations. The first is a reiteration of a point made in the Hoermle case majority opinion, where it is pointed out that, while there is great need for a method of filling such a vacany on the Columbus council, that need must be met by charter amendment, and “this court has no power or authority to do that.” During the oral argument in the present case, there were accusations, incriminations and recriminations as to why no such amendment had been adopted after this court' so pointedly indicated the need, but in any event the charter continues to retain its obvious inadequacy. More emphatically, and with the hope that the observation will not again remain unheeded, we repeat that we have neither power nor authority to alter the Charter of the City of Columbus.
Secondly, we deplore the fact that the appointee must be burned by a fire not of his kindling. We know the appointee only by his enviable reputation and hope that all men of good will may recognize that the question of his qualification for office has not been a factor in these considerations.
Taut, J., concurs in the foregoing concurring opinion.